IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BOBBY ALPHONSO GRIER,

                    Plaintiff,

    v.

DEP. REISINGER, DEP. SCHENCK, DEP. LIMON,
DEP. LINDER, DEP. VEGA ROMAN, and NURSE
CLIFF,

                    Defendants.

ORDER

22-cv-748-wmc

Plaintiff Bobby Grier is a state prisoner representing himself in this 42 U.S.C. § 1983 action, stemming from an alleged incident at the Dane County Jail.  As brief background, Grier is proceeding on Eighth Amendment excessive force and deliberate indifference claims against Dane County Sheriff's Office Deputies Reisinger, Schenck, Limon, Linder, and Roman and Nurse Cliff Lawton.  Grier alleges that defendants removed him from bed, causing him extreme pain, and then ignored his back pain.  Grier has filed motions for: (1) orders compelling defendants to produce certain video footage and documents, dkt. ##58, 63, 86; (2) an order deeming all late requests for admission admitted, dkt. #88; (3) sanctions, dkt. ##72-74, 87; (4) appointment of counsel, dkt. #66; (5) appointment of an expert, dkt. #70; (6) an extension of time to file dispositive motions and ten additional interrogatories, dkt. #62; and (7) an order restating what Judge Stephen Crocker said about producing video footage at the preliminary pretrial conference, dkt. #85.  The court will address Grier's motions in turn.

## I. Discovery Motions

At the outset, Grier argues that defendants waived their objections to his discovery requests by untimely responding to them.  Dkt. ##78, 80, 87.  It does appear that defendants responded late to Grier's first requests for production.  Dkt. ##61-1, 61-2, 65.  "Failure to timely assert objections to discovery requests may result in a waiver of all objections that could have been seasonably asserted."  *Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.*, 236 F.R.D. 396, 398 (N.D. Ill. 2006).  Here, however, the court will not conclude that defendants waived their objections given that most of their objections were warranted.  In the future, the court expects defendants to timely respond to Grier's discovery requests or request an extension of time to complete them.

### A. First Motion to Compel, Dkt. #58

In his first motion to compel, Grier seeks an order compelling the deputy defendants to produce certain video footage and documents.

*First*, Grier requested video footage from the male segregation unit.  Defendants initially referred Grier to video footage from "Pod 4E," which they produced in response to his first requests for production.  Dkt. #61-2, at 2.  Now, defendants appear to draw a distinction between video footage from "Pod 4E" and video footage from the segregation unit and, based on that distinction, represent that video footage from the segregation unit does not exist.  If that is the case, there is nothing for the court to compel defendants to produce.  Dkt. #75 at 4 n.2.  However, the court agrees with plaintiff that, given the record as a whole, specifically Lawton's interrogatory response discussed below, there is some confusion as to whether video footage from the segregation unit existed at some point and

2

was available to the defendants for review.  Accordingly, the court orders the deputy defendants to supplement their responses to Requests for Production Nos. 1 and 2 to clarify whether video footage from the segregation unit from the dates in question did exist at some point and, if so, why it does not now.

*Second*, Grier requested all grievances, complaints, conduct reports, disciplinary reports, and disciplinary records for the deputy defendants.  In his motion to compel, Grier asserts that he needs this information to see if there were other instances of these defendants mistreating inmates, which suggests that he intends to use that evidence for an impermissible propensity inference.  Dkt. #61, at 3; Fed. R. Evid. 404(b)(1) (preventing evidence of "other act[s]" from being used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character").  Grier points out that such evidence *may be admissible* for non-propensity reasons "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Nevertheless, Grier does not explain how the defendants' discipline histories would be relevant to a non-propensity purpose, so the court will not compel the deputy defendants to produce such histories.  *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) ("district court should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose" (emphases original)).

*Third*, Grier requested any notes, reports or written statements from the defendant deputies concerning the incident involving him, but defendants represent that they have

produced all relevant written reports, dkt. #75, at 4, so there is nothing for the court to compel them to produce.

*Fourth*, Grier requested all documents regarding defendants' job duties, job descriptions, policies, procedures, directives, medical training, oaths, professional standards, advanced medical training, regulations, and rules.  Grier does not need all the Dane County Sheriff's Office policies, and it would be unnecessarily burdensome for defendants to find and organize these documents when many of them are irrelevant to this case.  However, Grier also requested specific policies about: (1) using spine boards and gurneys; (2) moving inmates with severe back pain; (3) when sheriff's deputies should respond to emergency medical situations; and (4) handling inmates with special needs and injuries.  Dkt. #61-2, at 4-5.  Defendants fairly assert that these policies are likely irrelevant to whether they violated Grier's constitutional rights.[1]  *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of . . . departmental regulations").  Nevertheless, defendants wrote that they would look for the policies and produce them if they found them, dkt. #61-6, so the court will grant the motion to the extent that, in fourteen days, the deputy defendants must either provide responsive policies or supplement their discovery responses under oath to identify the steps taken to locate responsive documents and confirming to the best of their knowledge that the deputy defendants do not possess responsive documents.  The motion is otherwise denied.

---

[1] Grier asserts that these policies are relevant to his negligence claim, but the court did not grant him leave to proceed on a Wisconsin state law negligence claim.  Dkt. #52.

**B.  Second Motion to Compel, Dkt. #63**

As to Grier's second motion to compel, he conferred with Lawton only about Requests for Production Nos. 3, 12, and 14, so those are the requests that the court will address.  Dkt. #44, at 10; Dkt. #64-5.  In Request No. 3, Grier requested Lawton's title, job description, and oath, along with nursing duties, policies, and procedures, professional standards, standard operating procedure, advanced techniques, licenses, regulations, and rules.  Dkt. #64-2, at 2.  Lawton objected that the request was vague and overbroad but explained that he was a registered nurse employed by Wellpath to work in the Dane County Jail.  *Id.* at 3.  In Lawton's conferral letter, he added that he did not personally possess Wellpath policy and procedure documents.  Dkt. #64-6, at 2.

In Request No. 12, Grier asked for the policy, procedure, or directive as to when someone should be sent to medical segregation.  Dkt. #64-2, at 5.  Lawton objected but explained that inmates can be moved to medical segregation if they have a medical condition that is changing or requiring increased medical attention.  *Id.*  In Lawton's conferral letter, he again added that he did not personally possess the requested documents. Dkt. #64-6, at 2.  Finally, in Request No. 14, Grier asked if Lawton made reports, notes, or incident reports about Grier from January 21 and January 22, 2023.  Dkt. #64-2, at 5. Lawton again objected to this request but apparently provided medical records.  *Id.*  In Lawton's conferral letter, he added that he had already given Grier all the responsive documents in his possession.  Dkt. #64-6, at 3.

Because Lawton has represented that he does not possess the documents that Grier asked for in Requests Nos. 3 and 12 and has already given Grier all the responsive

documents in his possession for Request No. 14, there is nothing for the court to compel Lawton to produce as to these requests.  Accordingly, the court will deny Grier's second motion to compel.

### C. Third Motion to Compel, Dkt. #86

Grier moves to compel Lawton to produce January 21-22, 2023, video footage from the "Dormitory 4E Pod" and the male segregation unit.  Lawton represented in his response to Grier's requests for production that he does not have those videos, but in response to Interrogatory No. 1, Lawton said that he had watched "the 4E Pod video and the male segregation for observation videotaped footage."  Dkt. ##87-3, 87-5.

Grier submitted an identical request for footage from "Dormitory 4E Pod" to the deputy defendants who produced footage on a flash drive.  Dkt. #61-2, at 3.  Accordingly, the motion will be denied in part, as the court will not compel Lawton to produce video that other defendants have already produced.  If Grier is having trouble viewing the footage that defendants have produced, he should work with defendants and the relevant prison officials to arrange for a time for him to view the video.  Grier also submitted an identical request to the deputy defendants for video from the segregation unit, but the deputy defendants represent that no footage from the segregation unit is available.  Dkt. #75, at 4 & 4 n.2.  As the court explained in addressing Grier's first motion to compel, the court cannot compel Lawton to produce something that does not exist.  The court understands Grier's confusion given that Lawton appears to have stated in his interrogatory response that he had viewed footage from the segregation unit that the deputy defendants say does not exist.  Accordingly, the motion will be granted in part, and Lawton is directed to

supplement his response to Interrogatory No. 1 within fourteen days specifically identifying the security videos he watched.

### D. Motion to Deem all Requests for Admission Admitted

Grier asks the court to find that the deputy defendants admitted all of his April 11, 2024, requests for admission because defendants did not respond to those requests until May 22, 2024, which he says was late.  Dkt. #88.  The court does not know when Grier's requests for admission were *served* on the deputy defendants, so the court cannot tell whether their response was late.  Fed. R. Civ. P. 36(a)(3) (allowing parties 30 days from *being served* to respond to requests for admission).  Even if defendants' response was late, the court will still deny Grier's motion, as he has not shown that he was prejudiced in any way by a delay of a few days when the dispositive motions deadline is more than four months away.

## II. Motion for Sanctions

Grier has also filed four motions for sanctions.  In the first motion, Grier seeks his expenses from litigating the motions to compel (copies, postage, paper, and pens) pursuant to Fed. R. Civ. P. 37(d)(3).  Dkt. #72.  Although Grier cites Rule 37(d)(3), Rule 37(a)(5) controls here because Grier brought a motion to compel discovery.  If a court grants the motion to compel in part and denies it in part, as the court does here, the court may choose to apportion the parties' expenses at its discretion.  Fed. R. Civ. P. 37(a)(5)(C).  The court is denying most of Grier's motions to compel, so it will deny his request for expenses.

In his next two motions, Grier seeks $100 in "nominal" damages because defendants did not respond to his interrogatories.  Dkt. ##73-74.  Grier states that he is moving for

sanctions instead of filing another motion to compel discovery because submitting another motion to compel would have required a lot of work.  Grier's request for sanctions is improper because there is no authority for the court to order nominal damages against a party for not responding to discovery requests under Rule 37.  *See* Fed. R. Civ. P. 37(b)(2)(A) (listing types of sanctions).  If there are currently outstanding discovery requests, the court urges the parties to work together to complete those requests.

Finally, Grier asks for sanctions against Lawton and to hold Lawton in contempt for not producing the videos he requested, dkt. #87, at 5, but given that the court is mostly denying Grier's motion to compel, his motion for sanctions and to hold Lawton in contempt will be denied.

## III. Remaining Motions

*First*, Grier asks the court to appoint him counsel, asserting that he is unable to afford counsel, his case is complex because it involves state of mind evidence, he does not understand the law, he is separated from key witnesses, and counsel would be better able to present witness testimony at trial.  Dkt. #66.  He adds that he has had constant assistance from other inmates in preparing the documents that he has filed, so those documents do not show that he can adequately represent himself.  In support, he has submitted response letters from four attorneys that have declined to represent him.  This court has the discretion to recruit pro bono counsel for a litigant representing himself who has shown that (1) he has made reasonable efforts to recruit a lawyer on his own and has been unsuccessful, *Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992), and (2) how the legal and factual demands of this lawsuit exceed his abilities to represent

himself further, *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).  At this stage, Grier's case does not merit recruitment of counsel because, contrary to Grier's assertion, this case involves the relatively straightforward issues of whether defendants used excessive force in removing him from bed and were deliberately indifferent to his serious medical needs. Moreover, there are currently no motions for him to respond to, and the dispositive motions deadline is more than four months away.  Accordingly, the court will deny the motion without prejudice to Grier's ability to renew it later in this lawsuit, provided that the circumstances of the case indicate that the legal and factual demands of the case exceed his abilities.

*Second*, Grier asks the court to appoint a medical expert to explain his back condition to a jury, arguing that experts are too expensive, and he cannot defeat summary judgment without one.  Dkt. #70.  To start, the court does not appoint experts to represent the interests of one party.  *See DeJesus v. Godinez*, 720 F. App'x 766, 772 (7th Cir. 2017) ("Rule 706 is used to appoint a neutral expert to interpret complex information for the trier of fact, not to represent the interests of one party").  Further, this court rarely recruits neutral experts, and only does so if necessary to help the court or jury interpret complex information.  *See id.*  Grier has not shown that his claims are so complex that an expert is necessary, so the court has no basis to appoint a neutral expert in this case.  Accordingly, the court will also deny this motion without prejudice to Grier's ability to renew it later in this lawsuit, provided he makes a specific showing about why an expert would be necessary to help the trier of fact.

*Third*, Grier moves for a two-month extension of the dispositive motions deadline and ten additional interrogatories to send to Lawton. Dkt. #62. The court will deny Grier's motion for an extension of time because, even though he states that defendants are delaying the case, the dispositive motions deadline is still four months away. Also, Grier does not need to move for summary judgment for his case to continue. Next, the court will also deny Grier's motion for ten additional interrogatories because, as explained in this court's preliminary pretrial conference order, the court does not typically allow additional interrogatories, dkt. #44, at 9, Grier states that he still has six interrogatories remaining, and he does not give a good reason for being allowed additional interrogatories, only asserting that he could have written better interrogatories.

*Fourth*, and finally, Grier asks the court to issue a written order mirroring Judge Crocker's admonition to the defendants to give Grier all video footage of the incident. Dkt. #85. The court will also deny this motion because, as explained above, the parties have already given him all the existing video footage.

ORDER

IT IS ORDERED that:

1) Plaintiff Bobby Grier's first and third motions to compel, dkt. ##58, 86, are GRANTED IN PART and DENIED IN PART, and defendants have until June 20, 2024, to supplement their responses.

2) Plaintiff's second motion to compel, dkt. #63, and motion to find requests for admission admitted, dkt. #88, are DENIED.

3) Plaintiff's motions for sanctions, dkt. ##72-74, 87, are DENIED.

4) Plaintiff's motions for appointment of counsel and an expert, dkt. ##66, 70 are DENIED without prejudice.

5) Plaintiff's motions for an extension of time and additional interrogatories, dkt. #62, and a written order restating what Judge Crocker told the parties, dkt. #85, are DENIED.

Entered this 6th day of June, 2024.


BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge